IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

STEPHEN LEWIS                                                    PLAINTIFF

V.                                                    NO. 3:23-CV-336-DMB-RP

CITY OF SOUTHAVEN, MISSISSIPPI;
and DETECTIVE WHITNEY WALLEY,
in her official and individual capacity as
a Southaven Police Department Detective                          DEFENDANTS

<u>OPINION AND ORDER</u>

Claiming a lack of probable cause for his arrest and detention on charges for credit card fraud and burglary, Stephen Lewis sued the City of Southaven, Mississippi, and Detective Whitney Walley alleging federal and state law claims. The City and Walley move for judgment on the pleadings or, alternatively, summary judgment on all Lewis' claims. Because Lewis' complaint sufficiently states a claim for an obvious Fourth Amendment violation based on Walley's alleged search and seizure of Lewis' cell phone, the motion will be denied as to the § 1983 claim against Walley in her individual capacity for illegal search and seizure. However, the motion will be granted as to all of Lewis' other claims due to Lewis' failure to allege sufficient facts to maintain them.

**I**
<u>Procedural History</u>

On August 29, 2023, Stephen Lewis filed a pro se complaint against the City of Southaven, Mississippi, and Detective Whitney Walley, in her official and individual capacity as a Southaven Police Department detective. Doc. #1. Alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights, Lewis asserts (1) 42 U.S.C. § 1983 claims against Walley in her individual and

official capacity for "false arrest,"[1] "malicious prosecution," "illegal search and seizure of cell phone content (photo)," and "loss of liberty;" (2) a § 1983 "municipal liability" claim against the City; and (3) a state law claim against Walley for "intentional infliction of emotional distress." *Id.* at 15–25. In support of his claims and the relief sought,[2] Lewis attached as exhibits to his complaint: (1) "Emails from Whitney Walley and Zack Edmonds;" (2) "Search Warrant State of Mississippi County of Washington County;" (3) "Amended Order for Nolle Prosequi and/or Dismissal;" (4) "Criminal Investigation Division Report of Detective Whitney Walley;" (5) "Information Sheet to Be Supplied to Prosecutor;" (6) "Affidavit for Search Warrant in the Circuit Court of Desoto County, Mississippi 17th Circuit Court District;" (7) "General Affidavit State of Mississippi Southaven;" (8) "Supplement #2 Narrative;" (9) "Capias;" and (10) "Order to Remand." Doc. #1-1.

The defendants answered the complaint on September 22, 2023. Doc. #9.[3] On October 27, 2023, the defendants filed a motion for judgment on the pleadings or, alternatively, for summary judgment. Doc. #16.

Nearly three weeks later, on November 22, 2023, Lewis filed (1) "Plaintiff's Motion for Summary Judgment and Memorandum in Opposition to Defendant's City of Southaven and

---

[1] In his complaint, Lewis asserts the "false arrest" claim "against Detective Whitney Walley and Deputy Court Clerk Brittany Williams, individually as well as in their official capacity." Doc. #1 at 16. "[T]he caption of a complaint is not necessarily determinative" but may be considered in identifying the parties to a lawsuit. *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1143 (5th Cir. 1981). Williams is not a defendant in this case because (1) Lewis does not name her as a defendant in the complaint's caption, Doc. #1 at 1, and (2) he does not include her in the "Parties" section of the complaint, *id.* at 3–4.

[2] Lewis seeks "an amount not less than four million dollars ($4,000,000.00) in actual and compensatory damages;" "punitive damages in an amount not less than six million dollars ($6,000,000.00);" and "injunctive and/or declaratory relief that the acts and conduct [alleged] were unconstitutional, and precluding [the defendants] from engaging in such activities in the future." *Id.* at 26 (emphasis omitted).

[3] The document, which is titled "Answer and Affirmative Defenses," has under the "Affirmative Defenses" heading a "*Motion to Dismiss State Law Claims*" and a "*Motion to Dismiss - §1983 Claim*." Doc. #9 at PageID 65, 66 (emphases in original). The Court "will not recognize a motion included within the body of the answer." L.U. Civ. R. 7(b)(2)(A).

Detective Whitney Walley, in Her Official and Individual Capacities Motion for Judgment on the Pleadings or Alternatively, Motion for Summary Judgment," Doc. #20; and (2) "Plaintiff's Motion for Summary Judgment and Memorandun [sic] in Opposition to City of Southaven and Detective Whitney Walley, in Her Official and Individual Capacities Motion for Judgment on the Pleadings or, in Alternative, Motion for Summary Judgment," Doc. #21. On December 15, 2023, the Court granted the defendants' November 28 motion to strike Lewis' November 22 filings as untimely "[t]o the extent Lewis' November 22 filings each include[d] his response to the defendants' motion for judgment on the pleadings."[4] Doc. #26 at PageID 261.

On February 14, 2024, the Court denied without prejudice Lewis' February 12, 2024, motion for summary judgment and struck his associated memorandum brief and "Undisputed Material Facts" because the contents of Lewis' "Undisputed Material Facts" should have been incorporated into the memorandum brief. Doc. #32.

Lewis filed another motion for summary judgment on March 4, 2024. Doc. #34. Two weeks later, the defendants moved to "stay their Response to and Ruling on Plaintiff's Motion for Summary Judgment" until the Court rules on their motion for judgment on the pleadings. Doc. #36 at PageID 407. The same day, the defendants moved for an extension to respond to Lewis' March 4 summary judgment motion. Doc. #38. The Court granted the motion to stay and denied as moot the motion for extension on April 2, 2024. Doc. #39.

## II
## Standard

The defendants seek judgment on the pleadings under Federal Rule of Civil Procedure

---

[4] The Court also determined that "reason exist[ed] to strike them in their entirety" "to the extent Lewis' November 22 filings each combine[d] his motion for summary judgment with his response to the defendants' motion for judgment on the pleadings, the filings violate Local Rule 7(b)(3)(C)'s prohibition that '[a] response to a motion may not include a counter-motion in the same document.'" Doc. #26 at PageID 261.

12(c) or, alternatively, summary judgment under Federal Rule of Civil Procedure 56. Doc. #17 at 5. They "invoke both rules" "[b]ecause Lewis attached numerous exhibits to his Complaint." *Id.*

Rule 12(d) instructs that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But "[b]ecause Rule 10(c) incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2024); *see Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. 2022) ("In our de novo review of the grant of a Rule 12(c) motion, we consider 'the contents of the pleadings, including attachments thereto.'") (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015)) (emphasis omitted).[5] So the Court will analyze the defendants' motion under Rule 12(c) only.

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "To survive a 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019) (cleaned up). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Guerra*

---

[5] Regardless, when "matters outside the pleadings are presented, the court has complete discretion to exclude them." *Great Lakes Ins. v. Gray Grp. Invs., LLC*, 550 F. Supp. 3d 364, 370 (E.D. La. 2021) (quoting *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020)) (quotation marks omitted).

*v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller*, 922 F.3d at 599).

### III
### Factual Allegations

Stephen Lewis resides in Shelby County in Memphis, Tennessee. Doc. #1 at 3. The City of Southaven is a municipality and political subdivision of the state of Mississippi. *Id.*; Doc. #9 at PageID 71. The City operates and maintains the Southaven Police Department where Whitney Walley is an employee and detective. Doc. #1 at 3.

On November 1, 2020, Officer Sturgill of the Southaven Police Department arrived at a Best Buy store located at 304 Market Plaza in Southaven, Mississippi, for a report of credit card fraud. *Id.* at 4. Kenny Horton informed Sturgill that his vehicle was broken into at the Memphis Zoo and his wife's purse was stolen with their Renasant Bank visa debit cards. Doc. #1-5 at PageID 34. Horton further informed Sturgill that he checked his checking account and saw that his Renasant visa debit cards were used at a Best Buy located at 304 Market Plaza for purchases totaling $4,102.12. *Id.* Best Buy provided Horton with a receipt showing that someone had purchased "(1) 50mm camera lens, (1) Sony camera, … and (2) IPAD 11 PRO" with his cards. Doc. #1-5 at PageID 35. A Best Buy associate advised that he would review the video footage to identify the purchaser and prepare a CD of the footage for a report. *Id.*

On November 13, 2020, Cory Weatherspoon, an investigator from the Washington County Sheriff's Department in Greenville, Mississippi, arrested Lewis in Greenville for two counts of auto burglary and one count of credit card fraud. Doc. #1 at 4–5. On November 18, 2020, Weatherspoon accessed the digital contents of Lewis' cell phone without a search warrant and called the Southaven Police Department regarding his findings. *Id.* at 5. The same day, Zack Edmonds, the dispatch shift supervisor, contacted Sergeant Seth Kern by email to share the information he received from Weatherspoon. *Id.* Edmonds' email stated:

5

Investigator Weatherspoon … called us this evening. He said they have someone in custody for auto burglary and in the course of their investigation they located evidence of multiple fraudulent purchases with illegally obtained credit cards including a receipt from Best Buy for a large amount possibly from report number 202000080385.

*Id.*

On November 20, 2020, Kern contacted Walley by email and asked, "Can you look into this?," and Walley responded, "Yes sir." *Id.* at 6. "On or about November 19th or 20th, 2020," Walley contacted Weatherspoon. *Id.* at 7. Weatherspoon informed Walley that Lewis was placed in custody for auto burglary and that during his investigation, he "located several electronic items and completed a search warrant on … Lewis' cell phone." *Id.* While searching Lewis' cell phone, Weatherspoon located photographs of receipts from the Best Buy in Southaven. *Id.* Weatherspoon sent the photographs to Walley by email, and she viewed them without obtaining a search warrant. *Id.* She could not see the card information but she noticed that "the receipt had the same date, time, items, and amounts bought with victim's credit card." *Id.* Walley went to the Best Buy located at 304 Market Plaza and the associate provided her with a "printout of the receipt, which matched [the] victim's information and … video of the incident." *Id.*

On November 23, 2020, Weatherspoon obtained a search warrant for Lewis' cell phone. *Id.* at 5. Two days later, Walley "prepared, signed, and swore out to an 'general affidavit' stating that [Lewis] did willfully, unlawfully, and feloniously with intent to defraud Carole Horton, using a credit card." *Id.* at 10. Before submitting the affidavit, Walley "was unable to see a clear picture of the suspect" on the video footage provided by the Best Buy associate; "did not conduct [a] photographic line-up;" "knew that no witness identified [Lewis] as the person in the Best Buy video;" "failed to conduct a handwritten comparison test;" and "knew that [Lewis] did not possess any of the [i]tems that were purchased with the victim's credit cards." *Id.* at 9.

On December 2, 2020, Officers K. Harris and Hawkins of the Southaven Police Department arrested Lewis pursuant to a "warrant for Felony Credit Card Fraud-Intent to Defraud." *Id.* at 13. Lewis was detained for two days at the Washington County Regional Correctional Facility, and for one day at the Desoto County Detention Facility. *Id.* Lewis posted a $15,000.00 bond and a court date was set for a preliminary hearing but no preliminary hearing was held. *Id.* at 14.

On December 14, 2020, Walley submitted a search warrant affidavit to search Lewis' cell phone. Doc. #1-7.

Lewis was "indicted as a habitual offender by the grand jury in the Third Circuit Court of Desoto County" on March 10, 2021. Doc. #1 at 14. On September 1, 2022, Lewis brought Walley's actions to the attention of the public defender during a court proceeding. *Id.* The same day, the State of Mississippi "remanded the case back to file for the charge of CREDIT CARD FRAUD upon the state having concerns over the probable cause." *Id.* at 14–15; *see* Doc. #1-11.[6]

**IV**
**Motion for Judgment on the Pleadings**

In seeking judgment on the pleadings, the defendants argue that Lewis' "claims against … Walley individually fail because she is entitled to qualified immunity;" "the official capacity claims against her should be dismissed because they are duplicative of the suit against the City of Southaven under federal law;" the "claims against the City of Southaven … should be dismissed because [Lewis] has utterly failed to properly plead the necessary elements of a *Monell* claim;" and the state law claim for intentional infliction of emotional distress "fails on its face." Doc. #17

---

[6] The "Order to Remand" filed in the Circuit Court of DeSoto County, which concerned only "Count(s) One," noted that "Defendant faces similar charges in another jurisdiction." Doc. #1-11 at PageID 49. On October 12, 2022, an "Amended Order for Nolle Prosequi and/or Dismissal" was filed in the Circuit Court of Washington County regarding the two counts of auto burglary and one count of credit card fraud pending against Lewis there. Doc. #1-4.

at 4, 7. Lewis did not timely respond to these arguments. But Local Rule 7(b)(3)(E) instructs that the Court may not grant a dispositive motion as unopposed merely because a party fails to file a timely response. So the Court will consider the merits of the defendants' arguments.

## A. Individual Capacity § 1983 Claims

Regarding Lewis' § 1983 claims against Walley in her individual capacity, the defendants argue she is entitled to qualified immunity because Lewis has not sufficiently alleged a violation of a constitutional right or that such a right was clearly established "in light of the specific context of the case." Doc. #17 at 8–9.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) "a violation of the Constitution or federal law," and (2) "that the violation was committed by someone acting under color of state law." *La. Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 F. App'x 317, 319 (5th Cir. 2020). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). To overcome a qualified immunity defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020).

### 1. Fourth Amendment claims

The complaint alleges Walley violated Lewis' Fourth Amendment rights by (1) "falsely arresting him," contrary to *Malley v. Briggs*, 475 U.S. 335 (1986); (2) "maliciously prosecuting him;" (3) "accessing, seizing, and viewing the receipt of Best Buy that was stored in [his] cell phone without obtaining a search warrant;" and (4) "subject[ing] [him] to the loss of liberty by …

obtaining the arrest warrant which … caused [him] to be unlawfully detained." Doc. #1 at 17, 19, 21, 22.

### a. False Arrest and Loss of Liberty

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A false arrest occurs, and an individual's Fourth Amendment rights are violated, when an officer conducts an arrest without probable cause." *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023). Where a plaintiff alleges he was detained without probable cause, he asserts a claim for false imprisonment under the Fourth Amendment. *See Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). To the extent Lewis asserts a claim for "loss of liberty" because Walley "filed a warrant affidavit … that lacked probable cause" "and obtain[ed] the arrest warrant which … caused him to be unlawfully detained," Doc. #1 at 22, the Court construes such as a false imprisonment claim.

Claims for both false arrest and false imprisonment require a plaintiff to "plausibly allege that [the arresting officer] 'did not have probable cause to arrest him.'" *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "[P]robable cause to arrest exists if, at the moment an arrest is made, the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the suspect has committed or is committing an offense." *Davis v. Strain*, 676 F. App'x 285, 287 (5th Cir. 2017).

Under the independent intermediary doctrine applicable to claims that depend on a lack of

probable cause,[7] "if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, that intermediary's 'independent' decision" regarding probable cause "'breaks the causal chain' and insulates the initiating party." *Buehler*, 824 F.3d at 554 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)); *accord Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation.").[8] But the initiating party is not insulated from liability if the plaintiff shows that he or she "tainted" "the deliberations of [the] intermediary." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (cleaned up).

Like the taint exception to the independent intermediary doctrine, a § 1983 claim for false arrest under *Malley v. Briggs* holds "an officer … liable for a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the officer presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Wilson*, 33 F.4th at 206 (quoting *Malley*, 475 U.S. at 344–45). The Fifth Circuit "has recognized … *Malley* as [a] functional exception[] to the independent intermediary doctrine." *Id.* at 208. So a plaintiff that adequately pleads a *Malley* claim need not further show that the independent intermediary doctrine does not apply to that intermediary's decision. *Id.*

However, *Malley* "does not … prevent a *second* intermediary's decision—such as a grand jury's subsequent indictment—from triggering the independent intermediary doctrine to ultimately insulate the officer from liability." *Id.* (emphasis in original). Where a second intermediary is

---

[7] *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553–54 (5th Cir. 2016) (citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Russell v. Altom*, 546 F. App'x 432, 436–37 (5th Cir. 2013)).

[8] *See also Terwilliger v. Reyna*, 4 F.4th 270, 285 n.10 (5th Cir. 2021) (warrant presumptively establishes probable cause); *Davis*, 676 F. App'x at 287 (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)) ("[G]enerally an arrest made pursuant to a properly issued warrant 'is simply not a false arrest.'").

involved, a plaintiff must show that "the second intermediary, like the first, did not have 'all the facts' before it necessary to render an independent determination of probable cause." *Id.* at 210 (quoting *Winfrey v. Rogers*, 901 F.3d 482, 497 (5th Cir. 2018)).

The defendants argue the *Malley* false arrest claim and loss of liberty claim fail because (1) there was probable cause to support Lewis' arrest for credit card fraud, Doc. #17 at 11–13; and (2) although the grand jury was a second independent intermediary, Lewis did not "allege *any* facts which plausibly plead that Walley interfered with the second independent intermediary's decision," *id.* at 10 (emphasis in original). They contend Lewis' arrest was supported by probable cause because Weatherspoon sent Walley a photograph of the Best Buy receipt he obtained from Lewis' phone; Walley matched the receipt to some of the items purchased with Horton's stolen credit card; the receipt contained the same date, time, items, and amount as the items purchased with Horton's card; and the Best Buy associate provided Walley with a receipt that matched the serial numbers depicted in the photograph. *Id.* at 12–13.

Although the defendants' arguments focus on what Walley knew when she submitted the arrest warrant affidavit, the Court considers only the facts presented in Walley's affidavit to determine whether there was probable cause because she was not the arresting officer and the complaint alleges Lewis was arrested pursuant to a warrant. *See Mayfield v. Currie*, 976 F.3d 482, 490 (5th Cir. 2020) (Willett, J., concurring) (probable cause exists for an arrest based on a warrant "when facts are stated in the arrest-warrant affidavit from which a judge could independently determine a crime was likely committed"). Because the defendants do not argue that Walley's affidavit contained the factual support necessary for the judge who issued the warrant to independently find probable cause, they have not shown that Lewis failed to plead a claim for false arrest or loss of liberty with respect to the warrant for his arrest. *See Blake v. Lambert*, 921 F.3d

215, 220–21 (5th Cir. 2019) (summary judgment on *Malley* false arrest claim properly denied because although defendant had information that may have established probable cause, defendant did not include information sufficient to establish probable cause in arrest warrant affidavit).

The Court, however, agrees that the grand jury indictment was a second intermediary decision that triggers the independent intermediary doctrine. *See Wilson*, 33 F.4th at 208. And the complaint contains no factual allegations establishing that the grand jury lacked the facts needed to make an independent determination of probable cause.[9] *See generally* Doc. #1.[10] The Court therefore concludes that Lewis' complaint fails to state a violation of his Fourth Amendment rights based on false arrest or loss of liberty because the grand jury indictment was an independent determination of probable cause that insulates Walley from liability. *See Wilson*, 33 F.4th at 210 (plaintiff must show second intermediary, "like the first, did not have 'all the facts' … to render an independent determination of probable cause") (quoting *Winfrey*, 901 F.3d at 497); *Winfrey*, 901 F.3d at 497 (grand jury did not act as independent intermediary capable of insulating officer from liability for false arrest because "material information" omitted from arrest warrant affidavit was not shown to have been submitted to the grand jury); *Lomas v. Par. of Ascension*, No. 16-00645, 2017 WL 3929305, at *5 (M.D. La. Sept. 7, 2017) (dismissing false imprisonment claim where independent intermediary doctrine established probable cause for arrest).

### b. Malicious Prosecution

To sufficiently state a malicious prosecution claim under § 1983, a plaintiff must show: (1) the commencement or continuance of an original criminal proceeding; (2) its

---

[9] The defendants argue the complaint does not allege Walley interfered with the grand jury's determination. Doc. #17 at 10. But Lewis need only allege that the grand jury, like the judge who issued his warrant, lacked the factual support to determine probable cause, not that Walley interfered with both the judge and the grand jury's determinations. *See Wilson*, 33 F.4th at 210 & n.4 ("[W]hile each defendant must fall within the scope of liability for the [*Malley*] violation …, there is no requirement to show that each … defendant also tainted the grand jury deliberations.").

[10] The complaint alleges that Walley "present[ed] the case to the grand jury without probable cause," Doc. #1 at 19, but this allegation is conclusory and is not incorporated into the "False Arrest" section of the complaint, *id.* at 16–18.

> legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Hous.*, 96 F.4th 741, 748 (5th Cir. 2024). As a threshold matter, a plaintiff must state an unlawful Fourth Amendment seizure. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

The defendants argue that Lewis fails to sufficiently plead a malicious prosecution claim because (1) there was probable cause to support the proceedings, and (2) the complaint's "bareboned, conclusory allegations" do not establish that Walley legally caused the criminal proceeding against Lewis or that she acted with malice. Doc. #17 at 14–15.

The complaint alleges Walley "acted with malice" by "institut[ing] and commenc[ing] a criminal charge against [Lewis] when she knowingly prepared, signed, and swore out to the charging affidavit for felony credit card fraud … without providing any facts and circumstances to establish probable cause for the charge;" and by "presenting the case to the grand jury without probable cause." Doc. #1 at 19. The complaint also alleges Walley "commenced the criminal charge out of spite and without probable cause." *Id.* at 20. But indictment by grand jury establishes probable cause. *See Russell*, 546 F. App'x at 436 (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). And as explained above, the complaint does not contain factual allegations showing the grand jury lacked the information necessary to make an independent determination of probable cause. This alone is sufficient to defeat the malicious prosecution claim. Additionally, the complaint contains no factual allegations demonstrating malice or causation. Consequently, Lewis fails to plead a Fourth Amendment violation based on malicious prosecution. *See Espinal*, 96 F.4th at 748–49 ("because Espinal has not plausibly alleged that the defendants suppressed, fabricated, or destroyed evidence before the grand jury, he has not plausibly alleged that the

defendants were the cause of his prosecution") (cleaned up); *Armstrong*, 60 F.4th at 279 (no malicious prosecution claim where plaintiff does "not plausibly allege[] facts showing the malice of any defendant").

### c. *Illegal Search and Seizure of Cell Phone Content*

#### i. *Constitutional violation*

As explained above, the Fourth Amendment protects the right against unreasonable searches and seizures. "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Bryan v. Cano*, No. 22-50035, 2022 WL 16756388, at *5 (5th Cir. Nov. 8, 2022) (alteration omitted). "[A] 'search' occurs for Fourth Amendment purposes when the government violates a subjective expectation of privacy that society considers objectively reasonable." *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001). Generally, an officer is required to obtain a warrant before engaging in a search or seizure. *Riley v. California*, 573 U.S. 373, 382 (2014). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Id.*

The defendants argue that the search and seizure of Lewis' cell phone content was not unlawful because Walley received a copy of the Best Buy receipt from Weatherspoon and "[s]he had every reason to rely on him as a trustworthy source" when submitting the search warrant affidavit for Lewis' cell phone. Doc. #17 at 16. However, Lewis alleges Walley seized and viewed the photographs from his cell phone without a warrant. Doc. #1 at 7. And the search warrant affidavit attached to the complaint indicates it was signed by Walley on December 14, 2020— almost a month after the date Lewis alleges Walley viewed the photographs from his phone. Doc. #1-7 at PageID 44–45; Doc. #1 at 7. So the defendants' assertion that Weatherspoon was a trustworthy source for Walley's search warrant affidavit does not aid their argument that Walley

lawfully seized and searched Lewis' cell phone content.

As to whether it was lawful for Walley to view the photographs without a warrant, the defendants contend that "the Washington County search warrant for Lewis's phone was issued on November 23, 2020, two days before the Southaven arrest warrant." Doc. #17 at 16–17 (footnote omitted). But the complaint alleges Walley viewed the photographs from Lewis' phone before November 23—"[o]n or about November 19th or 20th." Doc. #1 at 7.

Because Lewis alleges Walley viewed the photographs from his phone without a warrant, and because the defendants have not offered any viable arguments that some exception to the warrant requirement applies, the Court concludes that Lewis sufficiently pled a violation of his Fourth Amendment rights based on the unlawful search and seizure of his cell phone content. *See Riley*, 573 U.S. at 401–02 (Fourth Amendment warrant requirement applies to cell phones unless there are "case-specific exceptions" or "exigent circumstances").

### ii. Clearly established

"A right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). To determine whether a right is clearly established, courts must consider "the specific context of the case." *Id.* "Therefore, unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

Plaintiffs have the burden to demonstrate a law was clearly established as of the date of the conduct giving rise to their claims by "identifying a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and … explaining why the case clearly proscribed the conduct of that individual officer." *Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir.

2020). "Plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Rojas*, 141 S. Ct. 52, 53–54 (2020). A case "directly on point" is not required where "existing precedent [has] placed the statutory or constitutional question beyond debate." *Banks v. Herbrich*, 90 F.4th 407, 416 (5th Cir. 2024); *see Austin v. City of Pasadena*, 74 F.4th 312, 326 (5th Cir. 2023) ("it is not necessary that the very action in question has previously been held unlawful … so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.") (internal quotation marks and citations omitted)).

The defendants argue it is Lewis' "duty to show that … Walley's … conduct violated clearly established law" and "[b]ecause he … cannot do this, his claims must fail." Doc. #17 at 19. Lewis does not identify any cases to support the argument that Walley violated his Fourth Amendment rights by viewing the photographs from his phone sent to her by Weatherspoon.[11] *See generally* Doc. #1. However, since the United States Supreme Court's *Riley* decision, the Fifth Circuit has repeatedly recognized that under the Fourth Amendment an officer must generally obtain a warrant to search the digital contents of a person's cell phone. *See, e.g.*, *United States v. Morton*, 46 F.4th 331, 340 (5th Cir. 2022) ("Before *Riley*, police could have searched Morton's phones on the spot after arresting him. … Because of *Riley*, the officers had to obtain warrants.") (internal citation omitted); *see also United States v. Beverly*, 943 F.3d 225, 234 (5th Cir. 2019) ("the Government must generally obtain a warrant supported by probable cause" to acquire cell site location information records "unless the search 'falls within a specific exception to the warrant requirement.'") (citing *Carpenter v. United States*, 585 U.S. 296, 316–17 (2018); *Riley*, 573 U.S.

---

[11] The Court need not comment on whether it was possible for Lewis to identify a case. It is sufficient to note that he failed to do so. *See Joseph*, 981 F.3d at 345 ("Plaintiffs do not identify a single case to support the argument that any reasonable officer would have known to intervene under these circumstances. We make no comment on whether Plaintiffs could have done so—the record in this case simply shows that they have not done so.").

at 382); *United States v. Venegas*, 594 F. App'x 822, 826 (5th Cir. 2014) ("A police officer must generally obtain a warrant before searching digital information on a suspect's cellular phone.") (citing *Riley*,573 U.S. at 378–404). So the fact that Lewis did not identify an analogous case is not fatal to his Fourth Amendment claim because "existing precedent [has] placed the … constitutional question beyond debate." *Banks*, 90 F.4th at 416.

### *iii.  Summary*

Walley is not shielded by qualified immunity because Lewis sufficiently stated a violation of his Fourth Amendment rights based on Walley's illegal search and seizure of his cell phone, and searching Lewis' phone without a warrant or an exception to the warrant requirement is an obvious constitutional violation.

### 2.  Fifth and Fourteenth Amendment claims

Lewis alleges the defendants violated his Fifth and Fourteenth Amendment rights by "falsely arresting him" and "subject[ing] [him] to the loss of liberty by … caus[ing] [him] to be unlawfully detained." Doc. #1 at 17, 22. As to loss of liberty, Lewis also claims the defendants "violated … his substantive and procedural due process rights, by filing the warrant affidavit against [him] that lacked probable cause and procuring and arresting [him] without due process of the law." *Id.* The defendants argue that there was no violation of Lewis' Fifth and Fourteenth Amendment rights because (1) "Lewis makes no claim against [them] regarding his treatment in jail;" and (2) the Fourth Amendment "'provides an explicit textual source of constitutional protection,'" so the Court "'must dismiss any Fourteenth Amendment claims to the extent they purport to be substantive due process claims,'" Doc. #17 at 17 (quoting *Rojas v. Kirkpatrict*, 2015 U.S. Dist. LEXIS 146304, at *19 (W.D. Tex. Oct. 28, 2015); *Harlow v. Hensley*, 2019 U.S. Dist.

LEXIS 174333, at *11 (W.D. Tex. Oct. 8, 2019)).

"[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Because Lewis does not allege any conduct by the federal government, he fails to state an actionable Fifth Amendment claim. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To sufficiently state a violation of procedural due process a plaintiff "must allege '(1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law.'" *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024) (quoting *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019)). To sufficiently plead a violation of substantive due process rights, a plaintiff must "'first identify a life, liberty, or property interest protected by the Fourteenth Amendment.' Then, a plaintiff must demonstrate that the challenged government action is not 'rationally related to a legitimate governmental interest.'" *Newell-Davis v. Phillips*, 551 F. Supp. 3d 648, 657 (E.D. La. 2021) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006)). "[W]here a [due process] claim of unlawful detention [is] accompanied by allegations that the initial arrest was not supported by valid probable [cause], … analysis [is] proper under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause." *Jauch v. Choctaw Cty.*, 874 F.3d 425, 429 (5th Cir. 2017) (citations and quotation marks omitted); *accord Romero v. Brown*, 937 F.3d 514, 522 (5th Cir. 2019) ("explicit textual sources of constitutional protection displac[e] 'the more generalized notion of substantive due process'") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

To the extent Lewis alleges Walley violated his substantive and procedural due process rights under the Fourteenth Amendment because she "subjected [him] to the loss of liberty" by obtaining an arrest warrant without probable cause which resulted in his detention for three days, Doc. #1 at 22, such claims are appropriately analyzed under the Fourth Amendment. *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) (§ 1983 claim for illegal arrest and detention "is properly considered under the Fourth Amendment"). For the reasons explained above, such claims fail under a Fourth Amendment analysis because the complaint does not contain any factual allegations establishing that Lewis was arrested or detained without probable cause.

### 3. Summary

The defendants' motion for judgment on the pleadings will be granted as to the § 1983 claims against Walley in her individual capacity for false arrest, loss of liberty, and malicious prosecution. The motion for judgment on the pleadings will be denied as to the § 1983 claim against Walley in her individual capacity for illegal search and seizure of cell phone content.

### B. Official Capacity and Municipal Liability § 1983 Claims

The defendants argue that Lewis' claims against Walley in her official capacity fail because such claims are duplicative of those against the City. Doc. #17 at 7. As to the claims against the City, the defendants argue that Lewis does not identify a final policymaker and, citing *Ratliff v. Arkansas County*, 948 F.3d 281, 284 (5th Cir. 2020), that Lewis fails to sufficiently allege a policy or custom that was the driving force behind a constitutional violation. *Id.* at 22.

To sufficiently state a § 1983 claim against a municipality, a plaintiff must plead facts establishing "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Piotrowski*

*v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). "A claim against an officer in his official capacity is treated as a claim against the municipality." *Jordan v. Brumfield*, 687 F. App'x 408, 415 (5th Cir. 2017). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted).

The allegations in the complaint regarding a custom or policy are too general and vague to identify the policy being challenged—Lewis' conclusory allegation that the City "is … liable under 42 U.S.C. § 1983 for 'maintaining' a policy, practice, custom, procedure or usage which authorized subjecting individual to being unlawfully arrested pursuant to a warrant affidavit that lacked probable cause" is insufficient. Doc. #1 at 23–24.

Even had Lewis sufficiently pled facts establishing an official policy or custom, the complaint contains no allegations identifying a policymaker with actual or constructive knowledge of such. *See generally* Doc. #1. And for the reasons previously explained, the complaint does not establish a constitutional violation as to the claims for false arrest, loss of liberty, and malicious prosecution. Therefore, the complaint fails to state a claim for municipal liability under § 1983 against the City or Walley in her official capacity.[12] *See Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (citing *Monell v. Dep't of Soc. Ser.*, 436 U.S. 658 (1978)) (plaintiff must identify a policy or custom and a policymaker with actual or constructive knowledge of it to establish a §

---

[12] Lewis also alleges that "[p]ursuant to the City's' failure to implement a process for its officers to obtain prior approval for their application for arrest warrant permitted … Walley to act contrary to its customs, practices, and procedures and violated [his] constitutional rights." Doc. #1 at 12. These allegations appear to attempt to assert a municipal liability claim against the City based on a failure to train. But such a claim would also fail because the complaint does not contain any factual allegations establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Jordan*, 687 F. App'x at 415.

1983 claim for municipal liability); *Johnson ex rel. A.N.E.R. v. City of San Antonio*, No. 23-50476, 2024 WL 50463, at *1 (5th Cir. Jan. 4, 2024) ("As is well established, every [municipal liability] claim requires an 'underlying constitutional violation.'") (quoting *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

### C. State Law Claim

The defendants argue Lewis' state law claim for intentional infliction of emotional distress fails because Walley "is entitled to protection under the [Mississippi Torts Claim Act]" ("MTCA") since the complaint "states, unequivocally, that '[a]t all times …Walley [wa]s an employee and Detective with the Southaven Police Department, acting … within the course and scope of her employment," and Lewis "has not come close" to pleading facts that plausibly show Walley's conduct "'evokes outrage or revulsion.'" Doc. #17 at 19 (quoting Doc. #1 at 3; *Gamble v. Dollar Gen. Corp.*, 852 So. 2d 5, 11 (Miss. 2003)).

The MTCA provides in relevant part:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

…

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury; [or]

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Miss. Code. Ann. § 11-46-9(1)(c), (d). Because malice is not within the scope of employment, *id.* § 11-46-5(2), a claim for intentional infliction of emotional distress is not barred by the MTCA to the extent such a claim "is predicated on malicious conduct." *Wieble v. Univ. of S. Miss.*, 89 So.

3d 51, 64 (Miss. Ct. App. 2011); *accord Hughes v. City of Southaven*, No. 3:18-cv-44, 2019 WL 2503959, at *4 (N.D. Miss. June 17, 2019) ("Malicious conduct is not considered to be within the scope of employment, and the state does not waive immunity for that conduct.").

To state a claim for intentional infliction of emotional distress under Mississippi law, a plaintiff must show (1) "the defendant acted willfully or wantonly towards the plaintiff;" (2) the defendant's acts "evoke outrage or revulsion in civilized society;" (3) the defendant's acts "were 'directed at or intended to cause harm to' the plaintiff;" (4) the plaintiff "suffered severe emotional distress as a direct result;" and (5) "[s]uch resulting emotional distress was foreseeable." *Rainer v. Wal-Mart Assocs., Inc.*, 119 So. 3d 398, 403–04 (Miss. Ct. App. 2013) (quoting *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906–07 (Miss. 2011)).

The complaint alleges Walley "acted … with malice" by "ensur[ing] that [Lewis] was charge[d] and arrested without probable cause;" her conduct "is outrageous, intolerable, and offends all accepted standards of decency and morality;" and her conduct "caused … Lewis, mental anguish, anxiety, inconvenience, and severe emotional distress for twenty-three (23) months of thinking that he was going to serve a life sentence in prison as an violent habitual offender." Doc. #1 at 23. However, these allegations are conclusory, and the complaint does not contain any allegations as to the foreseeability of his emotional distress. *See generally id.* So Lewis' state law intentional infliction of emotional distress claim against Walley fails. *Rainer*, 119 So. 3d at 403–04 (foreseeability of emotional distress is a necessary element of intentional infliction of emotional distress claim); *Heinze*, 971 F.3d at 479 ("a complaint must allege more than labels and conclusions" to avoid dismissal).

### D. Summary

The motion for judgment on the pleadings will be denied as to the § 1983 claim against

Walley in her individual capacity for illegal search and seizure, but it will be granted as to all other claims.

## V
## Alternative Motion for Summary Judgment

As an alternative to their motion for judgment on the pleadings, the defendants move for summary judgment as to all Lewis' claims. However, the only basis they provide for this request is that "Lewis attached numerous exhibits to his Complaint." Doc. #17 at 5. As explained above, because attachments to the complaint are part of the pleadings, the Court properly considered the attachments to Lewis' complaint without converting the defendants' motion for judgment on the pleadings into a motion for summary judgment. *See Foerster*, 2022 WL 38996, at *2. For its lack of sufficient argument, the alternative motion for summary judgment will be denied without prejudice.[13]

## VI
## Conclusion

The motion for judgment on the pleadings [16] is **GRANTED in Part and DENIED in Part**. It is GRANTED as to all claims except the § 1983 claim against Walley in her individual capacity for illegal search and seizure. It is DENIED as to the § 1983 claim against Walley in her individual capacity for illegal search and seizure. It is DENIED without prejudice as to the alternative request for summary judgment.

**SO ORDERED**, this 27th day of June, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[13] The Court generally disfavors the combining of a motion based on the pleadings with a motion for summary judgment.